1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11  CHERYL J. PETERSON,            )  Case No. CV 10-2160-OP
                                   )
12                  Plaintiff,     )
                                   )
13          v.                     )  MEMORANDUM OPINION; ORDER
                                   )
14  MICHAEL J. ASTRUE,             )
    Commissioner of Social Security, )
15                                 )
                    Defendant.     )
16  _____)

17          The Court[1] now rules as follows with respect to the disputed issues listed in

18  the Joint Stipulation ("JS").[2]

19  / / /

20  / / /

21  / / /

22

23  _____

24       [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
    United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 10.)

25
         [2]  As the Court stated in its Case Management Order, the decision in this
26  case is made on the basis of the pleadings, the Administrative Record, and the Joint
    Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules
27  of Civil Procedure, the Court has determined which party is entitled to judgment
    under the standards set forth in 42 U.S.C. § 405(g).
28

                                     1

**I.**

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1)    Whether the Administrative Law Judge ("ALJ") properly evaluated Plaintiff's subjective complaints of pain; and

(2)    Whether the ALJ properly considered Plaintiff's treating physician's opinion.

(JS at 4.)

**II.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

/ / /

**III.**

**DISCUSSION**

**A.     The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of arthritis of the left hip, right shoulder, and left knee; and left bunion and hammer toes with potential for surgical intervention.  (Administrative Record ("AR") at 55.)  He also found that Plaintiff has the residual functional capacity to perform a narrowed range of sedentary work, with the following limitations:  Plaintiff is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; she can stand and/or walk for fifteen to thirty minutes at one time with the use of a cane as needed, and can carry on this way for one hour out of an eight-hour period; she can sit for seven hours with normal breaks, such as every two hours; she cannot walk on uneven surfaces, climb stairs or ladders, work at heights, or balance; she cannot work above shoulder level on the right due to arthroscopic surgery on the right shoulder and decompression in September 2007; she cannot operate foot pedals on the left side due to her left lower extremity impairments; she can occasionally bend and stoop; she can perform simple, repetitive tasks; she must be able to lie down during the lunch break and would miss work two days a month.  (Id. at 56-57.) Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing work as a small items assembler (such as hospital products or eyeglasses), and charge account clerk.  (Id. at 62.)

**B.     The ALJ's Credibility Determination.**

Plaintiff contends that the ALJ failed to articulate sufficient reason for rejecting her subjective complaints of impairment.  (JS at 4-12.)  Specifically, at the hearing, Plaintiff testified about the nature and extent of her condition.  She testified that:  she suffers from pain and swelling in the hips, shoulder, left knee, and left foot (AR at 13-14); her foot and knee pain are the most severe, and the pain is the biggest obstacle to working (id. at 26-27); her foot pain is a 9.5 out of

1  10, and she could not do a sitting job due to pain (<u>id.</u> at 30); she has problems with

2  weight bearing, and although she has pain when sitting, it is worse standing  (<u>id.</u> at

3  22); she cannot be on her feet two hours a day, sit for more than fifteen to thirty

4  minutes at a time, and needs to lie down during the day (<u>id.</u> at 24, 58); she takes

5  Narco and Ibuprofen, and utilized Vicodin in the past, the pain is a 9 out of 10

6  before medication (<u>id.</u> at 24-25); and she wakes up three to four times a night due

7  to pain, and spends the majority of her day lying down (<u>id.</u> at 36).  (<u>Id.</u> at 58.)

8         In his decision, the ALJ discounted Plaintiff's credibility as follows:

9              After considering the evidence of record, the undersigned finds

10         that the claimant's medically determinable impairments could reasonably

11         be expected to produce the alleged symptoms, but that the claimant's

12         statements concerning the intensity, persistence and limiting effects of

13         these symptoms are not entirely credible.  The consultative examiner

14         found symptom magnification and poor effort on the claimant's part.

15         Mood lability appeared volitional and exaggerated at the psychiatric

16         consultative examination.   Also, at the psychiatric consultative

17         examination, she denied a history of alcohol abuse; yet, records from her

18         treating physician clearly show that she did have a problem with alcohol

19         and had been an alcoholic.  In addition, at the hearing, the claimant

20         testified that she stopped drinking on her own.  If the claimant was not

21         truthful in certain aspects of her claim, then it is reasonable to conclude

22         that she was not truthful in her testimony and exaggerated her pain and

23         symptoms.  As discussed below, two doctors, including the claimant's

24         own treating physician, Dr. Birkenstein, were not comfortable filling out

25         disability papers for the claimant.

26  (<u>Id.</u> (citations omitted).)  Thus, the ALJ discredited Plaintiff's testimony based on

27  the consultative examiner's findings, the psychiatric examiner's findings,

28  Plaintiff's conflicting and inconsistent statements regarding her alcohol abuse, and

4

1   statements by her treating physicians regarding filling out disability papers.

2       An ALJ's assessment of pain severity and claimant credibility is entitled to

3   "great weight." <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v.

4   Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986).  An ALJ's credibility finding must be

5   properly supported by the record and sufficiently specific to ensure a reviewing

6   court that the ALJ did not arbitrarily reject a claimant's subjective testimony.

7   <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-47 (9th Cir. 1991).  When, as here, an

8   ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny

9   benefits, the ALJ must make explicit credibility findings.  <u>Rashad v. Sullivan</u>, 903

10  F.2d 1229, 1231 (9th Cir. 1990); <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir.

11  1981); <u>see also</u> <u>Albalos v. Sullivan</u>, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit

12  finding that claimant was not credible is insufficient).

13      Under the "<u>Cotton</u> test," where the claimant has produced objective medical

14  evidence of an impairment which could reasonably be expected to produce some

15  degree of pain and/or other symptoms, and the record is devoid of any affirmative

16  evidence of malingering,[3] the ALJ may reject the claimant's testimony regarding

17  the severity of the claimant's pain and/or other symptoms only if the ALJ makes

18  specific findings stating clear and convincing reasons for doing so.  <u>See</u> <u>Cotton v.

19  Bowen</u>, 799 F.2d 1403, 1407 (9th Cir. 1986); <u>see also</u> <u>Smolen v. Chater</u>, 80 F.3d

20  1273, 1281 (9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993);

21  <u>Bunnell</u>, 947 F.2d at 343.

22      To determine whether a claimant's testimony regarding the severity of her

23  symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1)

24  ordinary techniques of credibility evaluation, such as the claimant's reputation for

25  lying, prior inconsistent statements concerning the symptoms, and other testimony

26

27      [3]  The medical expert testified at the hearing that there was nothing in the

28  record to suggest malingering or feigning of Plaintiff's symptomatology.  (AR at
    18.)

1  by the claimant that appears less than candid; (2) unexplained or inadequately

2  explained failure to seek treatment or to follow a prescribed course of treatment;

3  (3) the claimant's daily activities; and (4) testimony from physicians and third

4  parties concerning the nature, severity, and effect of the claimant's symptoms.

5  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80

6  F.3d at 1284.  The Social Security Rulings ("SSR") further provide that an

7  individual may be less credible for failing to follow prescribed treatment without

8  cause.  SSR 96-7p.

9          In this case, there is no debate that the objective medical evidence provides

10  indication of an impairment that could reasonably be expected to produce some

11  degree of pain and/or other symptoms.  In discounting Plaintiff's credibility, the

12  ALJ relied in part on the consultative examiner's findings that although Plaintiff's

13  examination revealed an antalgic gait, there seemed to be "a fairly large subjective

14  component," and Plaintiff exhibited "poor effort" when rotating her right shoulder.

15  (AR at 60 (citing id. at 309, 310).)  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir.

16  1993) (consultative examiner noted that claimant's complaints of pain were

17  "mildly amplified"); Thomas, 278 F.3d at 959 (claimant's failure to give a

18  sufficient effort during physical capacity evaluations supported ALJ's credibility

19  determination).  Elsewhere in his decision, the ALJ noted that the consultative

20  examiner also indicated that although Plaintiff limped, she did not need an assistive

21  device to walk,[4] and that although she complained of pain in the left knee, left foot,

22  and right hip, she was receiving no ongoing treatment.  (AR at 60 (citing id. at

23  307.)  In fact, he notes that on September 25, 2006, one year after her hip surgery,

24  she reported to Dr. Mayo that she had occasional right hip pain but overall was

25

26          [4] The clinical psychologist also noted that although Plaintiff brought a

27  walker to the session, she "did not place the walker on the ground and use it for

28  stability."  (AR at 344.)  Instead, she "carried the walker above the ground as if she
    was carrying a handheld item."  (Id.)

6

1   "very pleased" with the results of her hip replacement. (Id. at 59.) Her primary

2   complaints at that time were a painful left foot/toe and right shoulder pain. (Id.)

3   Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ

4   may properly rely on conflict between claimant's testimony of subjective

5   complaints and objective medical evidence in the record).

6        The ALJ also noted the psychiatric consultative examiner's finding that

7   Plaintiff's "[m]ood lability appeared volitional and exaggerated" at that

8   examination. (AR at 58.) In her report, the clinical psychologist noted that

9   Plaintiff's mood was "somewhat exaggerated and histrionic," and that Plaintiff

10  became hyperemotional during the examination;[5] however when the consultative

11  examining psychologist explained that Plaintiff was there for an intake interview,

12  Plaintiff's "crying immediately ceased and she became very logical and matter-of-

13  fact." (Id. at 344.) The consultative examiner diagnosed Plaintiff with histrionic

14  personality disorder. (Id. at 346.) This diagnosis is made if the individual

15  "displays rapidly shifting and shallow expression of emotions" and "shows self-

16

17  _____

18        [5] Specifically, the clinical psychologist observed:
      When the claimant arrived into the office for the interview process, the
19    claimant immediately began crying and asked if she could take "a pill."
      She stated she was too upset to proceed without the pills. The claimant
20    kept repeating that she needed to take a pill in order to calm down. The
      claimant was supplied with water and took a pill. Within 30 seconds to
21    a minute, the claimant appeared visibly calmer. This is unusual. The
      claimant was calmer for approximately 5-10 minutes and then began to
22    become hyperemotional once again. The claimant then began to beg for
      reassurance, asking that this writer reassure her that she would get better
23    and everything would be okay in her life. When it was explained to her
      that this was not a therapeutic alliance nor a counseling service, and that
24    this was an intake interview process, her crying immediately ceased and
      she became very logical and matter-of-fact. This appears to indicate that
25    there is a cognitive component to her hyperemotionality.

26  (AR at 344.)

27

28

1    dramatization, theatrically, and exaggerated expression of emotion." <u>Diagnostic</u>
2    <u>and Statistical Manual of Mental Disorders-DSM-IV-TR</u> 714 (Am. Psych. Ass'n
3    ed., 4th ed. 2000).  An individual with this disorder often seems to turn on and off
4    her emotions too quickly to be deeply felt.  <u>Id.</u> at 711.

5         Plaintiff contends that the ALJ improperly used a genuine symptom of
6    Plaintiff's diagnosis of histrionic personality disorder, i.e., her mood lability, to
7    reject her pain testimony.  (JS at 9.)  However, an ALJ's consideration of a
8    claimant's tendency to exaggerate and "poor effort" during a consultative
9    examination, have been found to support discrediting the claimant's testimony.
10   <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).  Moreover, the Court
11   agrees with the Commissioner that even if a tendency to exaggerate can be
12   attributed to the histrionic personality disorder, the effect remains the same –
13   Plaintiff has a tendency to exaggerate her physical complaints.  Thus, given the
14   additional evidence in the record, the ALJ could reasonably infer that Plaintiff's
15   complaints were not as severe as she presented.  <u>Tommasetti v. Astrue</u>, 533 F.3d
16   1035, 1041 (9th Cir. 2008) (ALJ may draw reasonable inferences from the record).

17        Citing <u>Young v. Heckler</u>, 803 F.2d 963, 966 (9th Cir. 1986), Plaintiff
18   contends it was error for the ALJ to rely on Plaintiff's inconsistent statements
19   regarding her alcohol abuse as a basis to finding her not entirely credible.  (JS at
20   10.)  However, <u>Young</u> merely stands for the proposition that because of an
21   alcoholic's propensity for downplaying the adverse <u>effects</u> of their drinking, undue
22   weight should not be given to such testimony in the face of medical evidence to the
23   contrary, as that testimony is not conclusive on the issue of a claimed alcohol-
24   related disability.  <u>Young</u>, 803 F.2d at 966.  That is not the issue here.  In fact,
25   <u>Young</u> specifically found that the ALJ did <u>not</u> err in considering the claimant's
26   testimony regarding his drinking habits.  <u>Id.</u>  Moreover, Ninth Circuit case law is
27   clear that an ALJ may properly consider a claimant's inconsistent reports regarding
28   substance abuse.  <u>Thomas</u>, 278 F.3d at 959 (citing <u>Verduzco v. Apfel</u>, 188 F.3d

8

1   1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to

2   reject claimant's testimony).

3          Finally, the Court agrees with Plaintiff that Dr. Birkenstein's and Dr.

4   Mayo's comments regarding their lack of confidence or comfort in filling out

5   disability paperwork is too vague and ambiguous to alone support discounting

6   Plaintiff's credibility.  However, even if this finding was error, the error was

7   harmless because there was substantial additional evidence supporting the ALJ's

8   credibility determination.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

9   1155, 1162, 1163 (9th Cir. 2008) (an error by the ALJ with respect to one or more

10  factors in a credibility determination may be harmless if there "remains substantial

11  evidence supporting the ALJ's conclusions" in that regard).

12         Based on the foregoing, the Court finds that the ALJ provided clear and

13  convincing reasons supported by substantial evidence for discounting Plaintiff's

14  credibility regarding the extent of her pain.  Thus, there was no error.

15  **C.    Treating Physician.**

16         Plaintiff contends that the ALJ rejected the opinion of Joseph Mayo, III,

17  M.D., Plaintiff's orthopedic surgeon,[6] without providing a specific and legitimate

18  reason for that rejection.  (JS at 17-22.)  Specifically, in a September 25, 2006,

19  letter from Dr. Mayo to Dr. Birkenstein regarding Plaintiff's condition, Dr. Mayo

20  wrote:

21              Unfortunately, she was kicked out of her fiancee's house.  The wedding

22          is off.  She owes twenty-some thousand dollars and can't get a job.  She

23          wants to get on social security disability so she can get Medical

24          Insurance.  Obvious orthopedic reason that would preclude her from

25          gainful employment.  She should get on a good pain management

26          regimen.  I called Dr. Birkenstein to see if he could be of help.

27  _____

28          [6] Dr. Mayo performed the total right hip replacement.  (AR at 225.)

(AR at 225.)

With respect to Dr. Mayo's opinion, the ALJ stated:

> The doctor's impression was: osteoarthritis of the left great toe, knee, and right shoulder acromioclavicular joint. The claimant was noted to want to get on Social Security disability so that she could get medical insurance. Dr. Mayo stated that the claimant had an obvious orthopedic reason that would preclude her from gainful employment and that he would contact the claimant's general practitioner, Dr. Birkenstein, to see if he could be of help.

> Dr. Mayo was of the opinion that the claimant had a disability that would preclude her from gainful employment; yet, he was not comfortable filing out any disability papers for her and referred her to her treating physician, Dr. Birkenstein who was also not comfortable completing any disability papers for the claimant [and] said that her attorney would know a physician that would do this for her.[7]

(Id. at 59 (citing id. at 218, 225).)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another

---

[7] Dr. Birkenstein said: "Regarding her other issues I have told her and the lawyer that I am not confident to do disability papers. Apparently Dr. Mayo is not either so my suggestion is that the attorney would know a physician that could do this for her. I did tell her that I was pleased that Dr. Lords was able to find something wrong that can be fixed." (AR at 218.)

10

1    doctor, it may be rejected only for "clear and convincing" reasons.  Lester v.
2    Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396
3    (9th Cir. 1991).  If the treating physician's opinion is controverted, it may be
4    rejected only if the ALJ makes findings setting forth specific and legitimate
5    reasons that are based on the substantial evidence of record.  Thomas, 278 F.3d at
6    957; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Winans v. Bowen,
7    853 F.2d 643, 647 (9th Cir. 1987).

8         "The treating physician's opinion is not, however, necessarily conclusive as
9    to either a physical condition or the ultimate issue of disability."  Magallanes, 881
10   F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir.
11   1989)); Tonapetyan, 242 F.3d at 1149 (although a treating physician's opinion is
12   generally afforded the greatest weight in disability cases, it is not binding on an
13   ALJ with respect to the existence of an impairment or the ultimate determination of
14   disability).  The issue of whether a claimant is disabled within the meaning of the
15   Social Security Act is an issue reserved for the Commissioner, and therefore the
16   opinion of a treating physician that a claimant is disabled will not be given special
17   significance.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

18        Plaintiff contends the ALJ did not properly address the weight he gave to
19   this opinion, and that the fact that Dr. Mayo did not want to fill out disability
20   paperwork yet stated in a report to another physician that he believes Plaintiff
21   cannot engage in employment, lends more veracity to his opinion, not less, as
22   inferred by the ALJ.  (JS at 20.)  Assuming that the statement actually reflects Dr.
23   Mayo's opinion, a fact of which the Court is not convinced,[8] Plaintiff's claim fails.
24
25
26        [8]  Although the ALJ apparently assumed that Dr. Mayo himself opined that
     Plaintiff had an "[o]bvious orthopedic reason" precluding gainful employment, the
27   Court finds Dr. Mayo's written statement is vague and ambiguous at best.  Reading
28   this statement in context, it might just as easily be inferred that Dr. Mayo may have
                                                              (continued...)

1   It is up to the ALJ to resolve conflicts and ambiguities in the medical evidence.

2   Tommasetti, 533 F.3d at 1041-42; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th

3   Cir. 1995).  Where the opinion of the treating physician is contradicted, and the

4   opinion of a nontreating source is based on independent clinical findings that differ

5   from those of the treating physician, the opinion of the nontreating physician may

6   itself be substantial evidence.  Andrews, 53 F.3d at 1041.  In such a case, it is

7   solely the province of the ALJ to resolve the conflict.  Id.; Tonapetyan, 242 F.3d at

8   1149 (a consultative examiner's opinion "constitutes substantial evidence, because

9   it rests on its own independent examination" of the claimant).

10          The ALJ need not accept the opinion of any physician, even a treating

11  physician, if the opinion is brief, conclusory, and inadequately supported by

12  clinical findings.  Thomas, 278 F.3d at 957.  Moreover, although he did not

13  specifically state that he was rejecting Dr. Mayo's opinion because it conflicted

14  with the testimony of Dr. Landau, the medical expert, the ALJ did state that he

15  gave greater weight to the medical expert's testimony and opinion, an opinion

16  which conflicted with Dr. Mayo's conclusion.  (AR at 61 (see id. at 14-20, 307-

17  311)); Morgan, 169 F.3d at 602 (ALJ may rely, in part, on the testimony of a

18  medical advisor to reject a treating physician's opinion).  Dr. Landau expressly

19  considered Dr. Mayo's treatment notes, as well as evidence of Plaintiff's foot and

20  shoulder impairments.  (AR at 15-16.)  An ALJ need not recite a magical

21  "incantation" expressly rejecting a physician's opinion.  Magallanes, 881 F.2d at

22  755.  Rather, a reviewing court is "not deprived of [its] faculties for drawing

23  specific and legitimate inferences from the ALJ's opinion."  Id.  As such, it is

24  proper for a reviewing court to read an ALJ's discussion of one physician and draw

25

26          [8](...continued)

27  simply been reporting statements made to him by Plaintiff regarding her desire to
    get disability benefits, including her belief that she would qualify because of an
28  "[o]bvious orthopedic reason" that would keep her from gainful employment.

1    inferences relevant to other physicians "if those inferences are there to be drawn."

2    Id.

3         In the present case, Dr. Mayo did not give a specific assessment of

4    Plaintiff's functional abilities during an eight-hour workday; he merely

5    conclusorily stated, in essence, that she was precluded from gainful employment

6    due to orthopedic reasons.  The ALJ's decision to question Dr. Mayo's opinion in

7    light of the fact that he would not prepare a disability report, for whatever reasons,

8    was a specific and legitimate reason for rejecting Dr. Mayo's opinion and a rational

9    resolution of the evidence presented.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th

10   Cir. 2005).  Moreover, other than this one ambiguous statement by Dr. Mayo, there

11   is no other indication in the record that any physician found Plaintiff totally

12   disabled.

13        Based on the above, the Court finds that the ALJ provided specific and

14   legitimate reasons for rejecting Dr. Mayo's opinion regarding Plaintiff's preclusion

15   from gainful employment for orthopedic reasons.  Thus, there was no error.

16                                          **IV.**

17                                        **ORDER**

18        Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be

19   entered affirming the decision of the Commissioner, and dismissing this action

20   with prejudice.

21

22

23   Dated:  December 17, 2010

24                                    HONORABLE OSWALD PARADA
                                      United States Magistrate Judge

25

26

27

28

                                          13